Charles R. Jacob III (CJ-4143)
Claire L. Huene (CH-2278)
MILLER & WRUBEL P.C.
250 Park Avenue
New York, New York 10177
(212) 336-3500

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TERWIN WAREHOUSE MANAGEMENT
LLC, as Program Administrator for and
Assignee of TERWIN MORTGAGE
WAREHOUSE TRUST II, SERIES VI,

                    Plaintiff,

    -against-

FINANCIAL MORTGAGE, INC.
and VIJAY TANEJA,

                    Defendants.

JUDGE STANTON

07 CV 10309

ECF Case

COMPLAINT

Plaintiff Terwin Warehouse Management LLC ("TWM"), by its attorneys Miller & Wrubel P.C., as and for its Complaint against defendants allege as follows:

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

### The Parties

1.    TWM is a limited liability company organized under the laws of the State of Delaware with its principal place of business at 45 Rockefeller Plaza, Suite 420, New York, New York 10111. TWM is engaged in the business of, inter alia, purchasing and selling mortgage loans, and commercial lending with respect to mortgage loans.

2. TWM's members, and the members of limited liability companies that are members of TWM, are citizens of New York, New Jersey and California. TWM is a citizen of New York, New Jersey and California for purposes of 28 U.S.C. § 1332(a).

3. TWM is the Program Administrator for Terwin Mortgage Warehouse Trust II, Series VI (the "Trust"), pursuant to an Amended and Restated Seller's Purchase, Warranties and Servicing Agreement dated as of March 18, 2005 (the "Agreement"), between the Trust as Purchaser and defendant Financial Mortgage, Inc. ("FMI"), as Seller.

4. The Trust is a Delaware statutory trust with its principal place of business at 45 Rockefeller Plaza, Suite 420, New York, New York 10111. The Trust's principal purposes are to purchase, own and sell mortgage loans.

5. Pursuant to the Agreement, TWM acts as Program Administrator for the Trust. The Agreement provides, in Section 1.01 (definition of "Purchaser"), that "[t]he duties, rights and obligations of the Purchaser [the Trust] hereunder shall from time to time be performed or enforced, as applicable, by the Program Administrator . . . ." Accordingly, TWM brings claims in this action as Program Administrator and assignee of the Trust's claims against FMI to enforce the rights of the Trust. Such assignment is expressly permitted by Section 13.12 of the Agreement.

6. On information and belief, defendant FMI is a corporation organized under the laws of the State of Virginia with its principal place of business at 11211 Waples Mill Road, Suite 200, Fairfax, Virginia 22030. On further information and belief, FMI is engaged in the business of, inter alia, originating and selling mortgage loans, including to the Trust.

7.      On information and belief, defendant Vijay Taneja ("Taneja") is a citizen of the State of Virginia who resides in the State of Virginia and whose business address is the same as FMI's, set forth above. Taneja executed a personal guaranty (the "Guaranty") of FMI's obligations to the Trust under the Agreement.

### Jurisdiction and Venue

8.      This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1332(a), as the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and is between citizens of different states.

9.      Venue in this District is proper pursuant to 28 U.S.C. § 1391 because defendants consented to venue in this Court, a substantial part of the events and omissions giving rise to the claim occurred in this District, a substantial part of the property that is the subject of this action is or should be situated in this District and defendants are subject to personal jurisdiction in this District.

10.     Defendants are subject to personal jurisdiction in this Court because, as more fully set forth below, they each consented in writing to jurisdiction in the State and County of New York, and pursuant to New York CPLR 302 because they transacted business in the State of New York, contracted to supply goods and services in the State of New York and received substantial revenues therefrom.

11.     In Section 13.21 of the Agreement, FMI expressly submitted in writing to personal jurisdiction and venue in the State of New York, including specifically "the exclusive general jurisdiction of the courts of the State of New York sitting in the Borough of Manhattan, the federal courts of the United States of America for the Southern District of New York, and appellate courts from any thereof."

12. In Section 10.6 of the Guaranty, Taneja consented to personal jurisdiction and venue in this Court, in terms substantially identical to those of FMI, set forth above.

### FMI's Breach of the Agreement

**A.     FMI's Failure to Transfer Servicing Rights and Documents**

13. In the Agreement, FMI and the Trust contracted for FMI to sell to the Trust certain Mortgage Loans, subject to the terms and conditions in the Agreement.

14. Pursuant to the Agreement, the Trust purchased from FMI a substantial number of Mortgage Loans.

15. Under Section 2.04 of the Agreement, the Trust became the owner of the Mortgage Loans so purchased, including "all the right, title and interest of the Seller [FMI] in and to the Mortgage Loans."

16. Section 2.03 of the Agreement provides that as a result of each purchase, the Trust also acquired "the right to service each such Mortgage Loan."

17. After the Trust purchased the Mortgage Loans, Section 2.03 of the Agreement provides that FMI would remain on as Servicer of the Mortgage Loans *only* for a limited period of time, the "Interim Servicing Period." During the Interim Servicing Period, FMI was to hold "all records or documents with respect to the Mortgage Loans....*in trust for the benefit of Purchaser* [the Trust]" (emphasis added).

18. In Article II of the Agreement, including but not limited to Sections 2.03 and 2.04 thereof, FMI agreed upon its sale of Mortgage Loans to "transfer[], assign[] and deliver[] to the Purchaser [the Trust] or its designee the right to service each such Mortgage Loan sold by it [FMI]," including, in connection with such

4

transfer of servicing rights, releasing and delivering to the Trust or its designee all servicing rights, files and documents related to such Mortgage Loans.

19. Thus, under the Agreement the Trust was and is entitled to end the Interim Servicing Period and direct FMI to transfer, assign and deliver to the Trust's designee the right to service the Mortgage Loans purchased by the Trust, including all loan and servicing files for each such Mortgage Loan.

20. The Mortgage Loans that the Trust purchased from FMI pursuant to the Agreement included the Mortgage Loans listed on Exhibit A hereto (the "Required Transfer Mortgage Loans").

21. During October 2007, TWM, on behalf of the Trust, instructed FMI several times to release, transfer and deliver to the Trust's designee all servicing rights, files and documents relating to the Required Transfer Mortgage Loans.

22. On November 2, 2007, by e-mail, and on November 6, 2007, by letter, TWM again directed FMI to release, transfer and deliver to the Trust's designee all servicing rights, files and documents relating to the Required Transfer Mortgage Loans.

23. In breach of the Agreement, FMI has failed to release, transfer and deliver all servicing rights, files and documents related to the Required Transfer Mortgage Loans to the Trust's designee.

24. The Trust has designated Specialized Loan Servicing, LLC ("SLS") to service the Required Mortgage Transfer Loans.

**B.   FMI's Failure to Remit Margin Deficit**

25. Under Section 12.04 of the Agreement, a Mortgage Loan purchased by the Trust is to be further conveyed or sold to a takeout investor ("Takeout Investor") identified by FMI in a transaction arranged by FMI, within 45 days after the

5

closing date of the Trust's purchase of such Mortgage Loan from FMI (the "Closing Date").

26. Under Section 12.04 of the Agreement, if FMI fails to find a Takeout Investor for a Mortgage Loan within 45 days (a "Required Sale Event" under the Agreement), TWM, as Program Administrator, has the right to sell the Mortgage Loan on behalf of the Trust.

27. Until FMI arranges a sale to a Takeout Investor with respect to a Mortgage Loan, such loan is defined as an "Uncovered Mortgage Loan" under the Agreement.

28. Under Section 12.03(a) of the Agreement, each business day TWM is required to determine the market value of each Uncovered Mortgage Loan that the Trust purchased from FMI.

29. Under Section 12.03 of the Agreement, if the market value of an Uncovered Mortgage owned by the Trust has declined since the Closing Date (a "Margin Deficit"), TWM, as Program Administrator, has the right, "in its sole discretion," to require FMI to transfer to the Trust cash or additional Mortgage Loans having an aggregate value of the Margin Deficit (a "Margin Call").

30. The Required Transfer Mortgage Loans are Uncovered Loans. The market values of the Required Transfer Mortgage Loans has declined since their Closing Dates. Collectively, the Margin Deficit for the Required Transfer Mortgage Loans is $4,219,001.

31. By letter dated November 6, 2007, TWM as Program Administrator made a Margin Call to FMI in the amount of $4,219.001. Pursuant to the

6

Agreement, FMI had to remit the Margin Deficit to the Trust by November 7, 2007. TWM also notified FMI of a Required Mortgage Sale Event with respect to each of the Required Transfer Mortgage Loans.

32. In breach of the Agreement, FMI has failed to remit the Margin Deficit to the Trust.

33. The Trust and TWM have fully performed all their obligations under and relating to the Agreement.

### AS AND FOR A FIRST CAUSE OF ACTION
### (SPECIFIC PERFORMANCE)

34. Plaintiff repeats and realleges the allegations of paragraphs 1 - 33, above, as if fully set forth herein.

35. FMI's failure to release, transfer and deliver to the Trust's designee, SLS, all servicing rights, files and documents related to the Required Transfer Mortgage Loans, for the purpose of effectuating the continued servicing thereof, was and is a breach of the Agreement.

36. The Trust is entitled to be put in the position that it would have been in had FMI performed its contractual transfer obligations.

37. The Trust has no adequate remedy at law with respect to FMI's failure to release, transfer and deliver all servicing rights, files and documents related to the Required Transfer Mortgage Loans.

38. To enforce the terms of the Agreement, plaintiff is entitled to specific performance by FMI of its obligations under the Agreement to release, transfer and deliver to the Trust's designee, SLS, all servicing rights, files and documents related

to the Required Transfer Mortgage Loans, for the purpose of effectuating the continued servicing thereof.

39. In addition, FMI continues to receive payments from homeowners with respect to the Required Transfer Mortgage Loans. Given FMI's breach of the Agreement and refusal to comply with plaintiff's request that it release, transfer and deliver the Required Transfer Mortgage Loans to SLS, there is significant risk that FMI has not serviced the Required Transfer Mortgage Loans properly, which would harm not only plaintiff but also the homeowners. Plaintiff is entitled to an accounting of all monies received by FMI with respect to the Required Transfer Mortgage Loans, to ensure that FMI has complied with the Agreement and its obligations as servicer in all other respects.

## AS AND FOR A SECOND CAUSE OF ACTION
## (CONVERSION)

40. Plaintiff repeats and realleges the allegations of paragraphs 1 - 39, above, as if fully set forth herein.

41. FMI's unlawful retention of the servicing rights, files and documents for the Required Transfer Mortgage Loans is an intentional and unauthorized exercise of control over property belonging to another, interfering with the lawful right of possession of the plaintiff therein. Plaintiff has a possessory right and interest in these rights, files and documents, and FMI's continued dominion thereover and interference with plaintiff's possessory right and interest is in derogation of plaintiff's lawful rights and interests.

42. As such, FMI's conduct with respect to the servicing rights, files and documents for the Required Transfer Mortgage Loans constitutes the tort of conversion.

43. For the reasons set forth above, to remedy such conversion, plaintiff is entitled to an order directing FMI to release, transfer and deliver to the Trust's designee all servicing rights, files and documents related to the Required Transfer Mortgage Loans, for the purpose of effectuating the continued servicing thereof.

44. FMI continues to receive payments from homeowners with respect to the Required Transfer Mortgage Loans, which it is no longer authorized to receive. Plaintiff is entitled to an accounting of all monies received by FMI with respect to the Required Transfer Mortgage Loans.

### AS AND FOR A THIRD CAUSE OF ACTION
### (UNJUST ENRICHMENT)

45. Plaintiff repeats and reallages the allegations of paragraphs 1 - 44, above, as if fully set forth herein.

46. As set forth above, FMI continues to hold and exercise dominion and control over all servicing rights, files and documents related to the Required Transfer Mortgage Loans, even though such rights, files and documents belong to the Trust.

47. FMI is, has been and continues to be unjustly enriched from holding the servicing rights, files and documents related to the Required Transfer Mortgage Loans notwithstanding that they belong to plaintiff.

48. Under principles of equity and good conscience, FMI should not be permitted to be unjustly enriched by keeping the servicing rights, files and documents related to the Required Transfer Mortgage Loans, which do not belong to it.

49. For the reasons set forth above, to remedy such unjust enrichment, plaintiff is entitled to an order directing FMI to release, transfer and deliver to the Trust's

designee, SLS, all servicing rights, files and documents related to the Required Transfer Mortgage Loans, for the purpose of effectuating the continued servicing thereof.

50. FMI continues to receive payments from homeowners with respect to the Required Transfer Mortgage Loans, which it is no longer authorized to receive. Plaintiff is entitled to an accounting of all monies received by FMI with respect to the Required Transfer Mortgage Loans.

### AS AND FOR A FOURTH CAUSE OF ACTION
### (FAILURE TO REMIT MARGIN DEFICIT)

51. Plaintiff repeats and realleges the allegations of paragraphs 1 - 50, above, as if fully set forth herein.

52. FMI's failure to remit to TWM, for the benefit of the Trust, the Margin Deficit of $4,219,001 was and is a breach of the Agreement by FMI.

53. The Trust is entitled to be put in the position that it would have been in had FMI performed its contractual obligations.

54. In addition, Taneja is personally liable for amounts owed by FMI to the Trust pursuant to the Guaranty.

55. Accordingly, TWM, in its capacity as Program Administrator and assignee of the Trust, is entitled to money judgment in favor of TWM and against FMI and Taneja, jointly and severally, in the amount of $4,219,001, plus interest.

### AS AND FOR A FIFTH CAUSE OF ACTION
### (INDEMNIFICATION FOR LEGAL FEES AND RELATED COSTS)

56. Plaintiff repeats and realleges the allegations of paragraphs 1 – 55, above, as if fully set forth herein.

57. Pursuant to § 9.01 of the Agreement, FMI expressly and unambiguously agreed to indemnify and hold the Trust, and TWM as its assignee, harmless "against any and all . . . losses, damages, . . . legal fees and related costs . . . and any other costs, fees and expenses that they may sustain in any way related to (i) the failure of the Seller [FMI] to observe and perform its duties, obligations, and covenants in strict compliance with the terms of this Agreement . . . ."

58. FMI's indemnity obligation expressly includes the legal fees and court costs, and all other costs, fees and expenses, that plaintiff has incurred, are incurring and will incur in connection with FMI's failure to observe and perform its obligations under the Agreement as set forth above, including but not limited to all attorneys' fees, court costs and other expenses incurred in this action.

59. In addition, Taneja is personally liable for amounts owed by FMI to the Trust pursuant to the Guaranty.

60. FMI and Taneja therefore are liable to plaintiff, jointly and severally, for all plaintiff's legal fees and related costs, and all other costs, fees and expenses that plaintiff has incurred, are incurring and will incur in connection with FMI's failure to observe and perform its obligations under the Agreement, plus interest.

WHEREFORE, plaintiff demands judgment in its favor and against defendants as follows:

(i) On the First, Second and Third Causes of Action, awarding plaintiff against FMI an order directing specific performance by FMI of its obligations under the Agreement to release, transfer and deliver to the Trust's designee, SLS, all servicing rights, files and

    documents related to the Required Transfer Mortgage Loans, and directing an accounting of monies received by FMI with respect to the Required Transfer Mortgage Loans;

(ii) on the Fourth Cause of Action, awarding plaintiff against FMI and Taneja, jointly and severally, a money judgment in the amount of $4,219,001, plus interest;

(iii) on the Fifth Cause of Action, awarding plaintiff against FMI and Taneja, jointly and severally, all of plaintiff's legal fees and related costs, and all other costs, fees and expenses that plaintiff has incurred, are incurring and will incur in connection with FMI's failure to observe and perform its obligations under the Agreement, plus interest; and

(iv) granting such other or further relief as the Court may deem just and proper in the circumstances.

Dated: November 14, 2007

        MILLER & WRUBEL P.C.

      By: _____
      Charles R. Jacob III (CJ-4143)
      Claire L. Huene (CH-2278)
      250 Park Avenue
      New York, New York 10177
      (212) 336-3500

      Attorneys for Plaintiff