UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TERWIN WAREHOUSE MANAGEMENT LLC, as Program Administrator for and Assignee of TERWIN MORTGAGE WAREHOUSE TRUST II, SERIES VI,

        Plaintiff,

-against-

FINANCIAL MORTGAGE, INC. and VIJAY TANEJA,

        Defendants.

07 Civ. 10309 (LLS)

ECF Case

# MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Charles R. Jacob III (CJ-4143)
Claire L. Huene (CH-2278)
MILLER & WRUBEL P.C.
250 Park Avenue
New York, New York 10177
(212) 336-3500

Plaintiff Terwin Warehouse Management LLC ("TWM"), through its undersigned counsel, as Program Administrator and assignee of Terwin Mortgage Warehouse Trust II, Series VI (the "Trust"), submits this memorandum of law in support of its motion pursuant to Rule 65 of the Federal Rules of Civil Procedure for a temporary restraining order ("TRO") and a preliminary injunction ("PI") requiring defendant Financial Mortgage Inc. ("FMI") to turn over servicing rights, files and documents for the mortgage loans (the "Required Transfer Mortgage Loans") listed on Exhibit A to the Complaint, dated November 14, 2007 ("Cplt.") to Specialized Loan Servicing, LLC ("SLS").

## PRELIMINARY STATEMENT

The Trust is the owner of the Required Mortgage Transfer Loans. Defendant FMI acts as interim servicer of the Required Mortgage Transfer Loans pursuant to an Amended and Restated Seller's Purchase, Warranties and Servicing Agreement dated as of March 18, 2005 (the "Agreement"), between the Trust as Purchaser and FMI as Seller. FMI acts as servicer *solely* on behalf of the Trust and at the election of the Trust. The Trust has the absolute right under the Agreement to replace FMI with a new servicer, and upon the Trust's election to transfer servicing, FMI must transfer the servicing rights and all mortgage and servicing files relating to the Required Mortgage Transfer Loans to the Trust's designee.

The Trust has demanded that FMI transfer servicing to a new servicer. In blatant violation of its obligations to the Trust, FMI has refused to do so. FMI has recently defaulted on its financial obligations to TWM. Under these circumstances, there is an immediate risk not only to the Trust but to the non-party homeowners that the Required Transfer Mortgage Loans are not being or will not be serviced properly. Given the current crisis in the mortgage industry and FMI's extraordinary and wholly unjustifiable refusal to transfer servicing, it is imperative that the servicing rights, files and documents for the

Required Mortgage Transfer Loans be immediately transferred to the Trust's designated new servicer so that the Trust can ensure that they are being serviced properly while this action is pending.

Accordingly, TWM, on behalf of the Trust, seeks emergency relief from the Court in the form of an temporary restraining order, followed by a preliminary injunction, directing FMI to immediately transfer the servicing rights, files and documents for the Required Transfer Mortgage Loans to the Trust's designee.

### STATEMENT OF FACTS[1]

TWM is the Program Administrator for the Trust pursuant to the Warehouse Agreement. A copy of the Agreement is attached to the Declaration of Barbara Chell, dated November 13, 2007 ("Chell Decl."), as Exhibit A. The Trust purchased residential mortgage loans, including the Required Transfer Mortgage Loans, from FMI pursuant to the Agreement. Cplt. ¶¶ 13-14, 20; Chell Decl. ¶¶ 5-6.

Under the Agreement, FMI acts as *interim* servicer for loans that it sells to the Trust under the Agreement. In Article II of the Agreement, FMI agreed to transfer to the Trust "or its designee the right to service each" mortgage loan sold by it to the Trust. Cplt. ¶ 16; Chell Decl. ¶¶ 7-9 & Ex. A §§ 2.03, 2.04. Thus, the Trust, acting through TWM, was and is entitled to direct FMI to transfer and deliver to the Trust's designee the servicing rights, and related files and documents, for each Required Transfer Mortgage Loan.

Servicing of mortgage loans involves, among other things, collecting, processing and recording homeowners' mortgage payments, transmitting such payments to the mortgage holder, processing a homeowner's satisfaction of a mortgage (including through

---

[1] Plaintiff asserts multiple claims against FMI. See Cplt. ¶¶ 34-60. Only the facts relevant to the instant motion for emergency relief are recounted herein.

2

the homeowner's sale of the property to a new borrower or refinancing of the mortgage through a new lender), and ensuring that any required insurance and tax payments are timely made on behalf of the homeowner. Mortgage servicing also requires care of confidential borrower credit information. Chell Decl. ¶ 19.

In October and November 2007, TWM repeatedly instructed FMI to transfer all servicing rights, files and documents relating to the Required Transfer Mortgage Loans to the Trust's designee.[2] Cplt. ¶¶ 21-22; Chell Decl. ¶¶ 12-16 & Exs. C-E.

FMI has refused to transfer the servicing rights, files and documents to the Trust's designee. Cplt. ¶ 23; Chell Decl. ¶¶ 14, 17 & Ex. D. It has offered no explanation or purported justification for its refusal to comply with the Agreement. Chell Decl. ¶ 14 & Ex. D. In addition, FMI has recently defaulted on its financial obligations to the Trust by failing to remit required margin deficits to the Trust. Cplt. ¶¶ 25-33; Chell Decl. Ex. ¶ 22.

TWM cannot transfer the Required Transfer Mortgage Loans to a new servicer with the files currently held by FMI. Chell Decl. ¶ 24.

TWM filed both the Complaint and the present motion, brought by Order to Show Cause, on November 14, 2007. TWM, on behalf of the Trust, seeks injunctive relief, specific performance, damages for breach of contract, and indemnification for legal fees and related costs, due to FMI's breach of the Agreement and its wrongful withholding of the servicing rights, documents and loan files. On the present motion for injunctive relief, TWM seeks relief only with respect to its claims for specific performance of FMI's obligations to

---

[2] The Trust directed FMI to deliver the servicing rights and files for the Required Transfer Mortgage Loans to Edison Mortgage Decisioning Solutions ("EMDS"). Chell Decl. ¶ 25 n. 2 & Ex. C. Herein, the Trust designates Specialized Loan Servicing, LLC ("SLS"). Id. ¶ 25. EMDS is an agent of SLS and is located at the same address. Id. ¶ 25 n.2. Thus, the Trust's designation of SLS herein is the equivalent of its prior designation of EMDS, and does not substantially deviate from its prior demands to FMI.

3

deliver servicing rights and files for the Required Transfer Mortgage Loans to the Trust's designee, and not with respect to its claims for money damages or indemnification.

## ARGUMENT

A motion for a temporary restraining order is subject to the same standard as a motion for a preliminary injunction: (a) irreparable harm, (b) likelihood of success on the merits, and (c) a balance of the equities in plaintiff's favor. See, e.g., Johnson v. Kay, 860 F.2d 529, 540 (2d Cir. 1988). In addition to prohibiting actions that would alter the status quo, temporary restraining orders and preliminary injunctions may require that the defendant take specified actions. See id. (affirming mandatory preliminary injunction). See also, e.g., Alvarez v. Hayward, No. 1:06-CV-745, 2006 WL 2023002, at *1-2 (N.D.N.Y. July 18, 2006) (granting preliminary injunction ordering defendant to return plaintiff's racing credential); Martin v. Weiner, No. 06-CV-0094E, 2006 WL 435477 (W.D.N.Y. Feb. 21, 2006) (granting preliminary injunction ordering defendant to process plaintiffs' applications for food stamps and provide food stamps to qualifying plaintiffs); In re Worldcom Secs. Lit., 354 F. Supp. 2d 455, 469-470 (S.D.N.Y. 2005) (granting mandatory preliminary injunction); Serio v. Black, Davis & Shue Agency, Inc., No. 05 Civ. 15, 2005 WL 3642217 (S.D.N.Y. Dec. 30, 2005) (same).[3]

---

[3] A heightened standard generally applies when the injunctive relief sought is mandatory rather than prohibitive, see, e.g., Alvarez at *1 (for mandatory injunctions, the movant must make "clear" and "substantial" showing of success on the merits, rather than mere "likelihood"), but the Second Circuit has made it clear that this heightened standard does not apply when the injunctive relief "grants only part of the relief to which a movant would be entitled on the merits" and only requires the defendant "to do what should have been done earlier." Johnson, 860 F.2d at 540. Here, TWM seeks mandatory injunctive relief only with respect to its claims for the servicing rights and files for the Required Mortgage Transfer Loans, not with respect to its claims for money damages, and to have FMI "do what should have been done earlier." However, as demonstrated infra, even if the Court were to apply the heightened standard for mandatory injunctions, TWM will clearly succeed on the merits, as FMI has no grounds for refusing to turn over the servicing rights and files.

Mandatory emergency relief is particularly appropriate and necessary to remedy a rogue servicer's wrongful retention of mortgage loan files, a critical problem at present due to the current crisis in the mortgage industry. The Northern District of Texas recently faced an identical situation to the one presented here, and granted the mortgage owner a temporary restraining order requiring the servicer to immediately deliver the servicing rights and files at issue to the plaintiff. See Federal Home Loan Mortgage Co. v. Amer. Home Mortgage Corp., No. 3:07-CV-1335-L, 2007 WL 2228619 (N.D. Tex. Aug. 3, 2007).[4] The Federal Home Court rejected defendant's argument that the plaintiff's damages caused by defendant's wrongful refusal to turn over the mortgage files were "purely monetary," and found a likelihood of irreparable harm caused by the servicer's actions. Id. at *5. In addition, the Court found that the temporary restraining order was in the public interest given the likely negative impact on the homeowners from the servicer's actions. Id. at *6.

TWM will prevail on the merits. The Trust owns the Required Transfer Mortgage Loans and its right to replace FMI as servicer is contractual and absolute. FMI has no basis for its refusal to honor its obligations under the Agreement.

In addition, as in Federal Home, there is a clear prospect of irreparable harm not only to the Trust but to the homeowners. It appears that FMI is facing financial issues that may adversely impact its ability to properly service the loans. Chell Decl. ¶ 22. The loans must be serviced properly in order to prevent processing and record-keeping errors in connection with the mortgages that could cost the non-party homeowners and TWM substantial time and money to resolve. See Chell Decl. ¶¶ 19-21. The impact to the homeowners could include interruptions in their ability to sell or refinance their homes, which

---

[4] A copy of the Federal Home decision is appended hereto.

5

requires proper documentation and processing by the servicer, as well as risks to homeowners' confidential credit information. It is unclear why FMI has taken the extraordinary step of refusing to transfer the files, but given such conduct, TWM must gain access to the files immediately to ensure that all obligations to the homeowners are being fulfilled and that the loans are being serviced properly.

The balance of the equities also favors TWM, which seeks nothing more than delivery of the Trust's property to a servicer of its choice. It has every right to demand that FMI transfer the servicing rights, documents and files, and FMI has no basis for refusing to do so. Under these circumstances, the equities favor TWM.

Moreover, extraordinary circumstances warranting a mandatory temporary restraining order and preliminary injunction are present in this case. FMI is failing to meet its financial obligations and may be headed for insolvency or bankruptcy. Under these circumstances, and particularly in light of the greater crisis in the mortgage industry, it is imperative that the Trust and other mortgage owners be able to immediately enforce contractual rights against loan servicers. FMI does not own the loans, but merely acts as servicer for the loans, and has no basis for withholding servicing rights, files and documents belonging to the Trust. If FMI retains them into bankruptcy, not only the Trust but the homeowners will be adversely effected by the difficulty in obtaining them afterwards, particularly given that FMI is currently receiving mortgage payments from the homeowners despite lacking any authority by the mortgage owner to receive such payments. This type of conduct preventing the owners of mortgage loans from exercising their rights is the very last thing that is needed in addition to the greater crisis in the mortgage industry.

## CONCLUSION

For the foregoing reasons, TWM respectfully requests that the Court order FMI to immediately turn over servicing rights, documents and files for the Required Transfer Mortgage Loans to the Trust's designee.

Dated: November 14, 2007

                                      MILLER & WRUBEL P.C.

By: *[signature]*
                       Charles R. Jacob (CJ-4143)
                       Claire L. Huene (CH-2278)
                       250 Park Avenue
                       New York, New York 10177
                       (212) 336-3500

                       Attorneys for Plaintiff

**Appendix**

Westlaw.

Slip Copy                                                                                                    Page 1

Slip Copy, 2007 WL 2228619 (N.D.Tex.)
(Cite as: Slip Copy)

Federal Home Loan Mortg. Corp. v. American Home Mortg. Corp.
N.D.Tex.,2007.
Only the Westlaw citation is currently available.
United States District Court,N.D. Texas,Dallas Division.
FEDERAL HOME LOAN MORTGAGE CORP., Plaintiff,
v.
AMERICAN HOME MORTGAGE CORP., Defendant.
Civil Action No. 3:07-CV-1335-L.

Aug. 3, 2007.

Thomas B. Alleman, John J. Reenan, William Frank Carroll, Winstead Sechrest & Minick, Dallas, TX, for Plaintiff.
Robert Brian Shields, Bart F. Higgins, Lawrence J. Friedman, Friedman & Feiger, Royce West, West & Associates LLP, Dallas, TX, for Defendant.

*MEMORANDUM OPINION AND ORDER*
SAM A. LINDSAY, United States District Judge.
*1 Before the court is Plaintiff Federal Home Loan Mortgage Corp.'s ("Freddie Mac") Complaint and Request for Temporary Restraining Order, Preliminary Injunction and Permanent Injunction (" Compl."), filed August 2, 2007. Although no separate formal motion or application for temporary restraining order was filed, Freddie Mac also filed two declarations in support of its request. After reviewing the filing and declarations, on August 2, 2007, the court held a hearing on Freddie Mac's request for temporary restraining order at which its counsel acknowledged that it sought a temporary restraining order pursuant to Rule 65 of the Federal Rules of Civil Procedure. Counsel for Defendant American Home Mortgage Corp. ("AHM") appeared at the hearing. On August 3, 2007, Freddie Mac filed a letter brief and additional declarations in support of its request; AHM filed a brief opposing the request; and thereafter Freddie Mac filed a reply.[FN1] After considering the request for temporary restraining order, declarations, response, reply, record, and applicable law, the court **grants** Plaintiff's request for temporary restraining order.

FN1. While the court did allow the parties the opportunity to provide the information regarding Freddie Mac's enabling statute and additional case citations to the court's law clerk by telephone before 10 a.m. on that date, the court did not grant either party leave to file additional submissions regarding the pending request for temporary restraining order. Counsel for Defendant stated to the court's law clerk that he believed that during the hearing, the court authorized Defendant to send a brief by facsimile to the court by 10 a.m. Although the attorney who made this statement was not present at the hearing, the court must take note of this misrepresentation to the court's law clerk. Not only does the court frown on submission by facsimile generally, requiring specific authorization of the court for such submissions, but the parties were not granted leave to submit supplemental evidence or briefing. **The court has reviewed and considered the additional evidence and briefing submitted by the parties, but the parties are admonished to comply with the court's orders and the local rules of practice for this district.**

I. Factual Background

Freddie Mac brings claims for declaratory judgment and injunctive relief, sequestration, and breach of contract. Freddie Mac alleges that AHM was a Freddie Mac seller and servicer until it was

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                         Page 2

Slip Copy, 2007 WL 2228619 (N.D.Tex.)
**(Cite as: Slip Copy)**

terminated by a letter dated August 1, 2007. Compl. ¶ 17. Freddie Mac and AHM's relationship was governed, in part, by Freddie Mac's Sellers and Servicers Guide (the "Guide") [FN2]. *Id.* ¶ 13. Plaintiff alleges that the Guide is the basic contract between it and its sellers and services, including AHM. *Id.* ¶ 8.

> FN2. Although the complaint is not verified, the Guide is a public document available on Freddie Mac's website of which the court takes judicial notice pursuant to Rule 201 of the Federal Rules of Evidence. Defendant did not object to the court taking judicial notice of the Guide at the hearing.

Freddie Mac sellers and servicers are required to maintain a mortgage file, along with all underlying books and records. *Id.* ¶ 9. The mortgage file, while maintained by the servicer, is owned by Freddie Mac. *Id.* These files include records that reflect underwriting decisions and all other documents required by the Guide and commonly maintained in the files of mortgage lenders or servicers. *Id.* ¶ 10.

The Guide lists several conditions upon which Freddie Mac may disqualify or suspend a servicer. *Id.* ¶ 14. Section 5.2(9) of the Guide provides that "[a]ny weakness or notable change in the financial or organizational status of the Seller or the Servicer that, in the opinion of Freddie Mac, could adversely affect Freddie Mac" is a basis for disqualifying or suspending a seller or servicer. *Id.*

Freddie Mac may terminate a servicer with cause for any of the reasons for disqualification listed in section 5.2. *Id.* Termination of servicing with cause is an immediate basis for disqualification. *Id.* The Guide also provides that: "Upon termination of the Servicing of any Mortgage, the Servicer is responsible for supplying ... all reports, documents, and information ... requested by Freddie Mac on the date specified by Freddie Mac." *Id.* The Guide also requires that upon the termination of a servicer, "all Escrow Funds, Escrow Accounts and prepared installments ... be transferred to the new Servicer on the date specified by Freddie Mac." *Id.* Finally, the Guide states: "The Servicer must use its best efforts to effect the orderly and efficient Transfer of Servicing to the new Servicer." *Id.*

*2 According to Plaintiff, AHM issued press releases on July 30, 2007 and July 31, 2007 stating that it could not fund certain of its lending obligations. *Id.* ¶ 15. Plaintiff alleges that AHM's financial condition prevents AHM from complying with its obligations under the Guide. *Id.* Plaintiff also claims that AHM has breached the Guide in numerous respects, including: failure to report and remit funds to Freddie Mac, failure to repurchase mortgages after receipt of Freddie Mac's repurchase letter, failure to appeal from Freddie Mac's request for repurchase, and its obligation to comply with the Guide. *Id.* ¶ 16.

By letter dated August 1, 2007 and sent via facsimile and overnight mail, Freddie Mac notified AHM that it was terminated as a seller or servicer. *Id.* ¶ 17; Ratcliffe Decl. ¶ 13. The letter required that AHM deliver all Freddie Mac files and records to Freddie Mac or its designee. Compl. ¶ 18. AHM has refused to deliver the files and records and has also failed to deliver a power of attorney to Freddie Mac. *Id.* ¶ 19. Freddie Mac demanded the files on August 1, 2007 at AHM's servicing facility in Irving, Texas, but AHM refused to provide the files. *Id.;* Ratcliffe Decl. ¶ 16; McKoy Decl. ¶¶ 2-3. AHM's counsel has also indicated to Freddie Mac that the files will not be released. Alleman Supp. Decl. ¶ 4.

Freddie Mac also argues that AHM announced its intention to close its doors to business on August 3, 2007. Alleman 2nd Supp. Decl. ¶ 3. Plaintiff submitted several news articles that state that AHM's company founder e-mailed employees stating, "American Home Mortgage has been forced to close" and "market conditions ... have deteriorated to the point that our business is no longer viable." *Id.,* Ex B, C. AHM employees also told journalists that AHM employees are "packing upD" and confirmed that the business was closing. *Id.,* Ex. C. AHM's own website states that the company is no longer accepting mortgage applications. *Id.,* Ex. A.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                 Page 3
Slip Copy, 2007 WL 2228619 (N.D.Tex.)
(Cite as: Slip Copy)

## II. Legal Standard

The purpose of a temporary restraining order is to "preserv[e] the status quo and prevent[ ] irreparable harm just so long as is necessary to hold a hearing, and no longer."*Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers,* 415 U.S. 423, 439, 94 S.Ct. 1113, 39 L.Ed.2d 435 (1974). Any temporary restraining order, therefore, is a temporary measure to protect rights until a hearing can be held.

There are four prerequisites for the extraordinary relief of a temporary restraining order or preliminary injunction. To prevail, a plaintiff must demonstrate: (i) a substantial likelihood of success on the merits; (ii) a substantial threat of immediate and irreparable harm for which it has no adequate remedy at law; (iii) that greater injury will result from denying the temporary restraining order than from its being granted; and (iv) that a temporary restraining order will not disserve the public interest. *Clark v. Prichard,* 812 F.2d 991, 993 (5th Cir.1987); *Canal Authority v. Callaway,* 489 F.2d 567, 572 (5th Cir.1974) (*en banc* ). The party seeking such relief must satisfy a cumulative burden of proving each of the four elements enumerated before a temporary restraining order or preliminary injunction can be granted.*Mississippi Power and Light Co. v. United Gas Pipeline,* 760 F.2d 618, 621 (5th Cir.1985); *Clark,* 812 F.2d at 993. Otherwise stated, if a party fails to meet *any* of the four requirements, the court cannot grant the temporary restraining order or preliminary injunction.

## III. Analysis

*3 Freddie Mac now seeks a temporary restraining order requiring AHM to deliver its mortgage files to Freddie Mac or its designee, to deliver all funds derived from Freddie Mac mortgage loans, to refrain from destroying any mortgage files or documents, and to refrain from taking any additional action on Freddie Mac loans. AHM opposes the entry of any temporary restraining order, arguing that it did not receive adequate notice in this case; that Freddie Mac has not established the element of irreparable harm; and that if a temporary restraining order is entered, Freddie Mac should issue a bond in the amount of $1 billion.

### A. Notice to Defendant

Defendant argues that Rule 65(a)(1) of the Federal Rules of Civil Procedure requires that the court grant it additional time to put on an evidentiary hearing before considering Plaintiff's request for a temporary restraining order. Defendant correctly quotes that section of the rule: "No preliminary injunction shall be issued without notice to the adverse party."Fed.R.Civ.P. 65(a)(1). That notice requirement, however, applies only to preliminary injunctions, and the request before the court is for a temporary restraining order.

AHM asserts that "[t]he starting point for Rule 65 is that a party must give fair and adequate notice to an opposing party before seeking a temporary restraining order."Def.'s Resp. 2. The court disagrees. Rule 65 clearly distinguishes between temporary restraining orders and preliminary injunctions. The court is clearly authorized to issue a temporary restraining order without notice to the defendant. Fed.R.Civ.P. 65(b). Plaintiff in this case provided notice to Defendant, and the court held a hearing so that both parties could be heard before the court made its determination. The court has also read and considered Defendants' response to Plaintiff's request for temporary restraining order. The court rejects Defendant's argument that the fact that notice was given to it somehow strips the court's ability to consider the request for a temporary restraining order without a full evidentiary hearing. While Rule 65(b) generally contemplates a temporary restraining order issued without notice to the defendant, there is nothing in the rule stating that notice to the defendant converts the request to a preliminary injunction. The rules simply require that any temporary restraining order be limited in length and that the court hold a preliminary injunction hearing quickly. While a temporary restraining order is an extraordinary remedy, the court has considered carefully the standard for granting such an order.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                                         Page 4
Slip Copy, 2007 WL 2228619 (N.D.Tex.)
**(Cite as: Slip Copy)**

Defendant also argues that the irreparable harm to it warrants additional time before ruling on the request for temporary restraining order. The court finds no procedural bar to ruling on Plaintiff's request at this time, and the issue of harm to the Defendant is discussed below in considering whether Plaintiff has established the four required elements.

### B. Substantial Likelihood of Success on the Meritst

*4 Plaintiff argues that it meets the first element because there is a substantial likelihood that it will succeed on the merits of its breach of contract claim. Freddie Mac contends that AHM breached its obligations under the Guide, that it was entitled to terminate AHM's seller and servicing rights, and that AHM is obligated to provide the mortgage files and funds to Freddie Mac immediately. At the hearing, Defendant argued that because the Guide provides a 15-day appeal period for termination decisions, it would continue to service the Freddie Mac loans until the appeal was decided and would not provide Plaintiff its mortgage files and funds.

The court has determined that Plaintiff is substantially likely to succeed on the merits of its claims. Other courts have recognized that Freddie Mac has the discretion to terminate a servicer for cause for violations of the Guide, and that Freddie Mac's decision to terminate also immediately terminates the seller or servicer's rights to service any Freddie Mac mortgage:
§ 5.2 of the Guide gives Freddie Mac the right to take whatever action it deems necessary to protect its interests, including disqualification or suspension of a seller or servicer. Under § 5.2, Freddie Mac may suspend or disqualify a seller or servicer either for cause or without cause, and such action is effective immediately upon notice of suspension or disqualification. Significantly, § 5.2 also states that the decision to suspend or disqualify a seller without cause, to terminate a service without cause is conclusive.... [W]hen Freddie Mac gave the notice of termination, [Defendant's] right to service the Freddie Mac portfolio ceased to exist.

*In re LiTenda Mortgage Corp.,* 246 B.R. 185, 192 (Bankr.D.N.J.2000) In another case involving a terminated seller and servicer, the Ninth Circuit Court of Appeals held that Freddie Mac "terminated [Defendant's] eligibility to sell and service mortgages, ... by oral notice, effective immediately, followed by written confirmation. Upon termination, [Defendant] ceased to be a " Seller/Servicer" and by the terms of the contract had no right to service mortgages owned by Freddie Mac."*American Bankers Mortgage Corp. v. Federal Home Loan Mortgage Corp.,* 75 F.3d 1401, 1412 (9th Cir.), *cert. denied,*519 U.S. 812, 117 S.Ct. 58, 136 L.Ed.2d 21 (1996). This result is bolstered by Plaintiff's argument at the hearing that even if Defendant appeals the termination decision, it has no right to service any loans until an appeal is decided, and if Defendant is reinstated as a servicer, Freddie Mac would assign it an entirely new and different portfolio of loans to service at that time. Tr. of TRO Hrg. 65:7-18.

Plaintiff has established that it had concerns about the financial condition of AHM, that AHM's financial condition has deteriorated, and that this is valid basis for the disqualification and termination of AHM as a Freddie Mac seller and servicer. Because the decision to terminate immediately divests AHM of its rights to service existing loans, Plaintiff has also shown that it is entitled to receive the mortgage files and funds associated with loans owned by Freddie Mac but previously serviced by AHM. Accordingly, the court concludes that Plaintiff has established the first requirement for a temporary restraining order.

### C. Irreparable Harm

*5 Plaintiff contends that AHM's failure to provide the mortgage files and funds irreparably harms it because without the mortgage files, Freddie Mac cannot transfer the loans to an interim servicer and continue servicing the loans it owns. Defendant argues that all of Plaintiff's alleged damages are purely monetary and are therefore not irreparable as a matter of law.

Through the testimony of Nita March, operational

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                Page 5
Slip Copy, 2007 WL 2228619 (N.D.Tex.)
**(Cite as: Slip Copy)**

risk management specialist for Freddie Mac, Plaintiff established that AHM serviced more than 4500 Freddie Mac loans worth approximately $800 million. Tr. 46:17-47:9.[FN3] The affidavit of Ronald Ratcliffe, Plaintiff's Vice President of Counterparty Credit Risk Management, establishes that Freddie Mac has chosen an interim servicer and that transferring the mortgage information to the interim servicer will prevent harm to borrowers by maintaining timely insurance and tax payments. Ratcliffe Decl. ¶ 17.

> FN3. Defendant objects to Ms. March's testimony as hearsay. The court determined at the hearing that Plaintiff adequately established that the records Ms. March testified to were business records pursuant to Rule 803(6) of the Federal Rules of Evidence. Even if her testimony is hearsay, the court may rely on it in determining a request for a temporary restraining order. *See Federal Sav. & Loan Ins. Corp. v. Dixon,* 835 F.2d 554, 558 (5th Cir.1987).

The additional evidence provided by Plaintiff bolsters its claim of irreparable harm. As of August 2, 2007, the press reported that AHM has closed its doors and that its employees had confirmed that the company was closing. Alleman 2nd Supp. Decl. ¶ ¶ 3-9, Ex. B-D. While Defendant has not addressed this argument in the short time this matter has been before the court, AHM is no longer in business and its employees confirmed that the company is closing, the court determines that AHM's continued refusal to provide the mortgage files and funds to Freddie Mac does cause irreparable harm to Plaintiff, a harm that has been made worse by the closing of the company, because AHM cannot continue servicing the loans even if it still had servicing rights. Accordingly, Plaintiff has established the second element of irreparable harm.

### D. Greater Injury

Defendant argues that granting the temporary restraining order will cause more damage to it than denying the request would harm Plaintiff. In fact, counsel for Defendant stated at the hearing, "My clients tell me if a TRO is issued, it will put the company out of business."Tr. 64:7-8. The evidence submitted by Plaintiff demonstrates that AHM's founder and Chief Executive Officer was telling its employees that AHM was out of business even before the court held its hearing. Alleman 2nd Supp. Decl. Ex. B. AHM's own website states that the company is no longer taking mortgage applications. *Id.* at Ex. A. A cursory internet search of the news demonstrates that multiple news sources are reporting that AHM has closed and has laid off its employees. The court does not believe that information of this importance would be put out for public dissemination if it was not true, and the court takes judicial notice that AHM announced on August 2, 2007 its decision to close most of its operations and terminate the employment of much of its staff.

Defendant apparently believes that the TRO will enforce or effect Freddie Mac's decision to terminate AHM. As noted by this court and the *LiTenda* and *American Bankers Mortgage* courts, however, Freddie Mac's decision to terminate AHM was discretionary and immediate. The court's decision regarding a temporary restraining order has no effect on AHM's termination as a Freddie Mac seller or servicer. Plaintiff has asked simply for the mortgage files and funds held by AHM. While Freddie Mac's decision to terminate AHM may well have contributed to the company's financial difficulties and decision to shut its doors, the court finds that AHM has not shown any significant additional injury that would be caused by the relief requested by Plaintiff. Given that Freddie Mac has shown irreparable harm, the court finds that Plaintiff has established the third element.

### E. Public Interest

*6 The court determines that Plaintiff has established the fourth element for a temporary restraining order, that is, that the order is in the public interest. Freddie Mac has shown that absent such an order, it cannot service more than 4500 loans worth approximately $800 million. Given the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                           Page 6
Slip Copy, 2007 WL 2228619 (N.D.Tex.)
**(Cite as: Slip Copy)**

amount of borrowers who may be harmed by AHM's refusal to provide the mortgage files to Freddie Mac, the court concludes that a temporary restraining order is in the public interest.

### F. Bond

Rule 65(c) of the Federal Rules of Civil Procedure provides: "No restraining order ... shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained."Fed.R.Civ.P. 65(c). Plaintiff asks the court to waive the bond requirement and argues that it is an "instrumentality of the United States." Tr. 63:17-18. In the alternative, Plaintiff asks that any bond be "nominal." *Id.* at 64:1.Defendant argues that the entry of a temporary restraining order will cripple AHM and asks that the court sets a bond in the amount of $1 billion.

Plaintiff argues that it is a government agency and exempted from the bond requirement. Fed.R.Civ.P. 65(c). While 12 USC § 1452 states both that Freddie Mac "shall be deemed an agency included in sections 1345 and 1442 of such Title 28," and that it need not "giv[e] any bond or security" when it removes a case to federal court, the court notes that Freddie Mac has argued inconsistently its governmental status. The *American Bankers* decision cited favorably by Plaintiff unambiguously concludes that Freddie Mac "is not a government agency" for the purposes of a takings claim. 75 F.3d at 1409. Defendant points out that this circuit has concluded that Freddie Mac is a shareholder-owned corporation in which the United States has no ownership interest. *See Frank v. Bear Stearns & Co.,* 128 F.3d 919, 923-24 (5th Cir.1997) (considering whether Freddie Mac contracts are government contracts).

The court concludes that while Freddie Mac was created by the government and is exempt from certain bond requirements, there is no such exemption for a bond required by Rule 65(c). At the same time, the court notes that Freddie Mac has established that it faces irreparable harm by AHM's failure to provide the mortgage files and funds and that AHM's injury is limited because it has already made the decision to close its doors. The damage, if any, to AHM would be primarily caused by a factor other than the issuance of the temporary restraining order. While a bond is required, the court does not find that a $1 billion bond is appropriate or necessary and that the court's order shall be limited to the specific relief requested by Plaintiff, the recovery of its mortgage files and funds.

### IV. Conclusion and Temporary Restraining Order

*7 The court, for the reasons herein stated, **determines** that the Plaintiff has satisfied each of the elements necessary to obtain a temporary restraining order. Accordingly, the court **grants** Freddie Mac's request for temporary restraining order.

The court therefore **orders** that pending a preliminary injunction hearing, Defendant American Home Mortgage Corp., and its officers, agents, representatives, employees and attorneys, and all persons acting in active concert or particularly with them, and each of them, must (i) immediately deliver to Plaintiff, or its designee, all mortgage loan files heretofore serviced by Defendant on behalf of Plaintiff, including the following documents: (a) loan origination documentation, including but not limited to, the original recorded deed of trust or mortgages and original recorded assignments, to Freddie Mac, original participation certificates, policies, and all loan underwriting documents; (b) all loan servicing documents, including, but not limited to, tax receipts and bills, insurance policies, insurance premium receipts, ledger sheets, payment records, insurance claim files and correspondence, foreclosure files and correspondence, current historical data files, and current loan level trial balances (including documents and records in whatever form existing, whether printed, handwritten, or on computer software); and (c) any documents described in (a) or (b) that come into Defendant's possession after the time Defendant has

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                          Page 7

Slip Copy, 2007 WL 2228619 (N.D.Tex.)
**(Cite as: Slip Copy)**

delivered the loan files; (ii) immediately deliver to Plaintiff, or its designee, all funds derived from these mortgage loans, including any funds designated as impounded funds, less servicing fees earned, and thereafter deliver any additional funds Defendant may receive with respect to these loans; (iii) refrain from destroying, altering or disposing of the mortgage loan documents required to be delivered to Defendant or its designated interim servicer; and (iv) refrain from taking any other action with respect to mortgage loans heretofore serviced by Defendant on behalf of Plaintiff, including, without limit, refraining from depositing any payments received by Defendant concerning the mortgage loans or from disbursing any sums held by defendant in connection with these loans except pursuant to court order.

Pursuant to Rule 65(c), the court hereby **sets** a bond in the amount of $25,000. This temporary restraining order shall not take effect until Plaintiff tenders to the clerk of the court $25,000 cash, or a bond for $25,000 in a form approved by the clerk of the court, in compliance with Rule 65(c) of the Federal Rules of Civil Procedure. The court finds that this amount is the minimal amount appropriate in light of the number of files involved.

The court also **sets** a hearing for consideration of Plaintiff's request for preliminary injunction for **August 21, 2007** at **9:00 a.m.** If Plaintiff seeks to file a brief in support of its request, such brief may be filed no later than **August 10, 2007** at **5:00 p.m.** Any response by Defendant may be filed no later than **August 17, 2007** at **5:00 p.m.** No further filings regarding the request for preliminary injunction will be allowed, and briefs filed without leave of court or by facsimile will be stricken from the record.

**\*8** It is so ordered.

N.D.Tex.,2007.
Federal Home Loan Mortg. Corp. v. American Home Mortg. Corp.
Slip Copy, 2007 WL 2228619 (N.D.Tex.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.